UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RODERICK ALBRECHT, *et al.*,

        Plaintiffs,

v.                                Civil Action No.: 07-CV-6162 T(F)

THE WACKENHUT CORPORATION,

        Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BOND, SCHOENECK & KING, PLLC
Attorneys for Defendant
 The Wackenhut Corporation
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8372
Facsimile: (315) 218-8100

Of Counsel:
    Robert A. LaBerge
    Christa R. Cook

# PRELIMINARY STATEMENT

Plaintiffs are present or former employees of The Wackenhut Corporation ("Wackenhut" or the "Company") who are, or were, employed as security guards at the Ginna Nuclear Power Plant in Ontario, New York ("Ginna").

Through this action, plaintiffs attempt to pursue claims under the Fair Labor Standards Act, 29 U.S.C. § 216(b) (the "FLSA"), and the New York Labor Law, seeking additional compensation for certain activities that occurred before and after their scheduled work shifts and workdays. Plaintiffs specifically assert that Wackenhut violated the FLSA and the New York Labor Law by failing to pay them for time spent "arming up and checking through security and arming down" at the Ginna facility. (Second Amended Complaint at ¶¶ 9 & 13). Wackenhut denies this assertion and respectfully submits that plaintiffs have been fully and fairly compensated for all work time in accordance with federal and state wage and hour laws.

The parties agreed to a bifurcated pre-trial procedure in this case, pursuant to which plaintiffs were allowed first to pursue joinder of additional Ginna guards to this action; the parties then engaged in discovery on the threshold question of whether the activities at issue in this case (clearing security, arming up, and arming down) constituted compensable work time under the FLSA or the New York Labor Law. Having completed discovery on this threshold issue, Wackenhut moves for summary judgment for the reasons summarized below.

Wackenhut respectfully submits that it is entitled to summary judgment in this case for several separate, independent reasons. First, the federal wage and hour laws recognize that employers are not required to compensate employees for time spent traveling or walking to their assigned work stations and/or engaging in other activities that are preliminary or postliminary to the performance of their assigned jobs. Second, the Second Circuit Court of Appeals has specifically ruled in a recent analogous case that time spent clearing security and performing preliminary tasks at a nuclear power plant is not compensable under the FLSA and the New York Labor Law. The Second Circuit's decision is in line with other federal court decisions and earlier Second Circuit authority, which recognize that travel/walking time and time spent

performing preliminary tasks to get ready for work are not compensable. Third, the federal courts also recognize that preliminary and postliminary activities can be excluded from compensable time for an additional reason where, as in the present case, the time spent performing such activities is *de minimis*. Finally, an additional and independent basis exists for dismissal of plaintiffs' wage and hour claims after March 1, 2006, as it is undisputed that the plaintiffs were compensated for all time spent arming up and arming down after that date.

For these reasons and others, Wackenhut respectfully requests that the Court grant this motion and issue an order dismissing plaintiffs' complaint in its entirety.

## FACTUAL BACKGROUND

Wackenhut has provided security services at Ginna since 1978. Ginna is a single unit nuclear generating station located along the shores of Lake Ontario in the Village of Ontario, New York. The facility is regulated by the Nuclear Regulatory Commission ("NRC") and has a secured area into which only authorized individuals are permitted entry. To gain access into the secured area, all employees, contractors, and visitors to the site must pass through a security clearance process that is located in Ginna's Security Building. Wackenhut guards staff and monitor the security clearance process at different posts located within the Security Building. Wackenhut guards also provide security services at various other posts located around the facility. (Hook Decl. at ¶¶ 4, 5 & 9).[1]

Historically, Ginna guards were compensated for all time starting with the commencement of their scheduled shift at the post to which they were assigned. (Hook Decl. at ¶ 15). This manner of compensating security guards remained substantially unchanged from 1978 until February 2006. During this twenty-eight year period, no claim for unpaid wages was ever filed by any Ginna guard. In fact, this action was not commenced until March 26, 2007,

---

[1] References to the November 12, 2008 supporting declaration of Christopher R. Hook, Wackenhut's Operations Supervisor, shall be made throughout this Memorandum as "Hook Decl. at ¶ _ or Ex._".

1497841.2

thirteen months after Wackenhut began compensating the Ginna guards for time they spent attending pre-shift briefings, following which they received their weapons.

In their Second Amended Complaint, a total of 115 former and current security guards seek compensation for time spent engaging in three specific activities: "[A]rming up and checking through security and arming down." (Second Amended Complaint at ¶¶ 9 & 13). Plaintiffs have represented, in earlier appearances in this action, that the total amount of time for these activities, which they assert is at issue in this case, is fifteen minutes. Wackenhut submits, and the record evidence shows, that the time at issue actually is substantially less than the fifteen minutes alleged by plaintiffs.

A. Work Schedules and Duties of Security Guards

The Wackenhut security guards employed at Ginna are currently represented by Local 27 of the International Union, United Government Security Officers of America (the "Union"), and their terms and conditions of employment are now governed by a collective bargaining agreement negotiated between Wackenhut and the Union. (Hook Decl. at ¶ 22).

As noted above, the security guards working at Ginna are responsible for controlling access to the facility. They conduct inspections and searches of people, materials, and vehicles entering the protected area of the plant and patrol the protected area, monitor security alarms, and escort people and/or verify the identity of people accessing the protected area. To accomplish these duties, security guards are assigned to different posts located at the main entrance to the Security Building, as well as at various other outlying posts throughout the facility. (Hook Decl. at ¶ 9).

Wackenhut provides security services at Ginna on a twenty-four hour basis and currently operates on three standard eight-hour shifts beginning at 6:30 a.m., 2:30 p.m., and 10:30 p.m., respectively. The security guards' work schedules are issued by Wackenhut's Operations Supervisor, who is currently Christopher Hook. Prior to June 2003, security guards could be assigned to one of these eight-hour shifts or to a twelve-hour shift which began at either 6:30 a.m. or 6:30 p.m. (Hook Decl. at ¶ 3).

B.  The Security Clearance Process

To get to the various posts to which Wackenhut guards are assigned, they must pass through the same security clearance process as do all other individuals, including employees, contractors and visitors, seeking to gain access to the Ginna plant. (*See* Hook Decl. at ¶ 5).[2] The process of clearing security takes place in the main entrance of the Security Building. The security clearance process requires a security guard to obtain his security badge from a badge rack at the entrance of the guard house, and then to pass through a radiation detector, an explosive material detector, and an x-ray machine. After retrieving any handheld items that were removed in order to pass through the x-ray machine, the security guard then swipes his security badge and palms a hand geometry unit to verify his identity. The security guard then proceeds through a turnstile, which is the last step in the security clearance process, and enters the protected area. (Hook Decl. at ¶ 5).

This security clearance process has generally remained unchanged since July 2003. Prior to that time, the process was similar except that the identity of security guards was visually verified by another security guard after the guard seeking entrance passed through the detection machines. Security guards normally report to work in uniform, which consists of blue pants, a blue shirt, boots, a hat, a jacket, and other equipment. Guards are free to wear their uniforms home and return to work in uniform on their next scheduled workday. Guards did not have to arrive on site at any particular time prior to their scheduled shift to be considered on time. Rather, security guards were simply required to be at their assigned posts at the beginning of their scheduled shift. Some security guards completed the security clearance process just a

---

[2] Several plaintiffs have similarly acknowledged that the security clearance process is the same for all individuals seeking to gain access to the protected area of the Ginna site. Relevant portions of plaintiffs' deposition testimony are attached to the November 12, 2008 supporting Declaration of Robert A. LaBerge and shall be referenced in this Memorandum as ("LaBerge Decl. at Ex. ___ - [plaintiff's name] and [page]"). *See, e.g.*, LaBerge Decl. at Ex. A - Albrecht Dep. Tr. 11:9 to 11:13; Ex. B. - Smith Dep. Tr. 19:4 to 19:21 & 21:2 to 21:9; Ex. C - VanLiew Dep. Tr. 25:2 to 25:22; Ex. D - Burt Dep. Tr. 13:7 to 13:11; Ex. E - Janke Dep. Tr. 17:14 to 18:14; Ex. F - Carlson Dep. Tr. 16:12 to 18:3; Ex. G - Huff Dep. Tr. 17:4 to 19:22; Ex. H - Mastrangelo Dep. Tr. 20:15 to 21:14; Ex. I - Youngs Dep. Tr. 15:4 to 15:9 & 18:12 to 18:20.

minute or two prior to the start of their shift and were able to retrieve their weapon and report to post on time. (Hook Decl. at ¶ 6, 8 & 16).

C.  Arming Up and Reporting to Post

Upon completing the security clearance process, security guards were able to go directly to a room (the "armory") where their weapons were stored to retrieve their gun from a supervisor assigned to man the armory. (Hook Decl. at ¶ 10).

Upon arriving at the room in which the armory was located, security guards first identified the serial number of their weapon; they then retrieved the weapon in a clearing barrel and followed a series of instructions from a supervisor regarding the process of loading and holstering the weapon. The "arming up" process was complete when the guard holstered the weapon. The time it took from when a security guard identified the serial number on his weapon to the time the weapon was holstered was approximately thirty seconds.[3] After retrieving their weapon, guards obtained a handheld radio just outside the armory, at which time the security guards signed a log to indicate which radio they took. (Hook Decl. at ¶¶ 11, 12 & 14).

After completing the "arming up" process, security guards reported to their first assigned post. It takes less than thirty seconds to walk from the armory, which is currently located in the guard house, to many of the posts. The remaining posts can easily be reached by a person walking at a normal pace in one to five minutes. (Hook Decl. at ¶¶ 14 & 17).[4]

Security guards were not asked to perform any work prior to the start of their regularly-scheduled shifts. Prior to March 1, 2006, guards were compensated for all work time starting with the beginning of their scheduled shift. (Hook Decl. at ¶ 15).

---

[3] Plaintiffs acknowledged that the "arming up" process generally took thirty seconds to complete. *See, e.g.*, LaBerge Decl. at Ex. A - Albrecht Dep. Tr. 20:18 to 21:15; Ex. B - Smith Dep. Tr. 26:22 to 27:20; Ex. C - VanLiew Dep. Tr. 36:8 to 36:24; Ex. D - Burt Dep. Tr. 23:20 to 24:4; Ex. E - Janke Dep. Tr. 26:17 to 26:21; Ex. F - Carlson Dep. Tr. 31:17 to 31:24; Ex. G - Huff Dep. Tr. 38:7 to 38:14; Ex. H - Mastrangelo Dep. Tr. 22:21 to 23:8; Ex. I - Youngs Dep. Tr. 21:11 to 21:21; Ex. J - Newstead Dep. Tr. 18:18 to 19:15.

[4] *See, e.g.*, LaBerge Decl. at Ex. A - Albrecht Dep. Tr. 13:12 to 14:11 & 17:12 to 18:5; Ex. B - Smith Dep. Tr. 29:15 to 30:11 & 36:11 to 36:14; Ex. C - Van Liew Dep. Tr. 37:21 to 38:22 & 42:7 to 43:10; Ex. D - Burt Dep. Tr. 14:14 to 15:9 & 21:11 to 21:14; Ex. E - Janke Dep. Tr. 28:22 to 29:7 & 32:10 to 32:15; Ex. F - Carlson Dep. Tr. 21:14 to 21:23 & 26:6 to 26:20; Ex. H - Mastrangelo Dep. Tr. 28:2 to 28:21 & 28:23 to 29:19; Ex. I - Youngs Dep. Tr. 16:6 to 16:24 & 18:7 to 18:11; Ex. J - Newstead Dep. Tr. 17:5 to 17:15.

D.    The Pre-Shift Briefings Initiated in February 2006

On or about February 26, 2006, Wackenhut implemented a pre-shift briefing for all security guards coming onto site at Ginna. Guards have been paid since that time from the beginning of these pre-shift briefings though the completion of the process of returning their weapons at the end of their shift. (Hook Decl. at ¶ 18 & 21).

During the pre-shift briefings, guards are advised about various issues relevant to their position, such as any incidents that may have occurred in previous shifts, developments in the industry, and/or changes in any Wackenhut policies or procedures. The pre-shift briefing is held in the Security Building. Guards are able to go directly to the shift brief room once they complete the security clearance process that takes place in the same building. Since the implementation of these pre-shift briefings, guards report to the shift briefing fifteen minutes prior to the start of their scheduled shifts. For example, a security guard assigned to work the 6:30 a.m. to 2:30 p.m. shift must report to the shift brief room in the guard house by 6:15 a.m. At the conclusion of the pre-shift briefing, the security guards report to the armory to retrieve their weapons and they then proceed to their first assigned post. (*Id.* at ¶¶ 18, 19 & 20).

Since on or about February 26, 2006, security guards have been compensated from the beginning of the pre-shift briefings, which occur before the "arming up" process begins. (Hook Decl. at 21). They continue to be paid through the remainder of the day until the "arming down" process is completed at the end of their shifts. (Hook Decl. at ¶ 21).[5]

---

[5] *See, e.g.*, LaBerge Decl. at Ex. B- Smith Dep. Tr. 39:19 to 41:15; Ex. C - Van Liew Dep. Tr. 49:2 to 50:16; Ex. D - Burt Dep. Tr. 33:6 to 34:21; Ex. G - Huff Dep. Tr. 47:22 to 48:16; Ex. I - Youngs Dep. Tr. 27:21 to 28:14; Ex.E - Janke Dep. Tr. 38:7 to 39:25; Ex H - Mastrangelo Dep. Tr. 34:3 to 35:15.

# ARGUMENT

## POINT I

### PLAINTIFFS ARE NOT ENTITLED TO COMPENSATION FOR THE PRELIMINARY AND POSTLIMINARY ACTIVITIES AT ISSUE IN THIS CASE

Plaintiffs seek compensation in this action for time spent "arming up, clearing security, and arming down" at the Ginna Nuclear Power Plant (Second Amended Complaint at ¶¶ 9 & 13). Although plaintiffs argue that they are entitled to additional pay for these activities under the FLSA and the New York Labor Law, they are unable to satisfy their burden of proof in this regard for several reasons. *See* Adams v. United States, 47 F.3d 1321, 1326 (2006) ("An employee who brings suit . . . for unpaid minimum wages or unpaid overtime compensation . . . has the burden of proving he performed work for which he was not properly compensated") (citations omitted).

As a threshold matter, plaintiffs cannot demonstrate that the activities about which they complain constitute "work time" under the legal standards governing such claims in the Second Circuit. *See* Gorman v. Consolidated Edison Corp., 488 F.3d 586 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 2902 (2008); *see also* Adams, 47 F.3d at 1326 ("[T]he burden of proof that work was performed necessarily includes the burden to demonstrate that what was performed falls into the category of compensable work" under the FLSA) (citations omitted). The undisputed facts in this case additionally confirm that the activities at issue involve travel time and/or other preliminary/postliminary time that is not compensable under the established FLSA standards. Gorman, 488 F.3d at 593-595. Moreover, the record evidence further shows that the amount of time at issue in this case is *de minimis*, which provides a separate and independent basis for denial of plaintiffs' claims in this case.

Plaintiffs' allegations accordingly can be dismissed for any one or more of the following reasons.

A.  The Portal-To-Portal Act Excludes the Activities at Issue from "Work Time" Under the FLSA

The Second Circuit has repeatedly held that "…not all work-related activities constitute 'work or employment' that must be compensated" …under the FLSA. Gorman, 488 F.3d at 591; *see also* Kavanaugh v. Grand Union Co., Inc., 192 F.3d 267, 271-72 (2d Cir. 1999) ("An employer is not required, however, to compensate an employee for all of the employee's time that is associated with work."), and Reich v. N.Y.C. Transit Authority, 45 F.3d 646 (2d Cir. 1995) (recognizing that an employer need only compensate an employee for "work time" as that term has been interpreted under the applicable statute and case law.)

Indeed, as the Second Circuit recognized in Reich, the Portal-to-Portal Act was enacted specifically for the purpose of "…delineat[ing] certain activities which did not constitute work and therefore did not require compensation under the FLSA." 45 F.3d at 649 (emphasis added). The "arming up, clearing security, and arming down" activities at issue in this case fall within those activities delineated in the Portal-to-Portal Act amendments for which compensation need not be provided. Gorman, 488 F.3d at 593-595.

Pursuant to the Portal-to-Portal Act amendments to the FLSA, employers need not compensate employees for any time spent:

(1) walking, riding, or traveling to and from all the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or

> subsequent to the time on any particular workday at which
> he ceases, such principal activity or activities.

29 U.S.C. § 254(a). The United States Department of Labor regulations interpreting Section 254(a) provide examples of activities engaged in at the beginning and end of the workday, which are non-compensable under the Portal-to-Portal Act amendments, including "walking … between the plant gate and the employee's lathe, workbench or other actual place of performance of his principal activity or activities;" "checking in and out and waiting in line;" and "changing clothes." (*See* 29 C.F.R. § 790.7(f) and (g).

In Gorman, the Second Circuit applied the Portal-to-Portal Act amendments in a case that is directly analogous to the present one. There, employees at the Indian Point Nuclear Power Station brought suit under the FLSA and the New York Labor Law seeking compensation for the time it took to clear "…security-related procedures at ingress to the plant, for suiting up, for some intervening steps, and for the same in reverse." 488 F.3d at 589. The Second Circuit described the time for which the Indian Point plaintiffs sought compensation in Gorman as follows:

> (i) Waiting in traffic outside the plant entrance;
>
> (ii) Badge inspection at the entrance, including a visual check of the interior of the car, and occasional random vehicle inspection (engine, trunk, glove compartment, undercarriage);
>
> (iii) Parking and walking to the command post;
>
> (iv) At the command post, waiting in line and passing through a radiation detector, x-ray machine, and explosive material detector;
>
> (v) Waiting in line to swipe an ID badge and to palm a sensor;
>
> (vi) Going to the locker room to obtain and don metal capped safety boots, safety glasses, and a helmet (if applicable);

> (vii) Walking to the job-site;
>
> (viii) And at the end of the shift, doing many of these things in reverse.

Gorman, 488 F.3d at 592.

The Second Circuit's description of the pre-and post-shift process and activities at issue in Gorman clearly captures the essence of plaintiffs' allegations in this case. The Court in Gorman held that the Indian Point plaintiffs could not carry their burden of showing that this time constituted compensable work time for purposes of the FLSA. *Id.* at 593-595. The Court therefore affirmed the dismissal of the plaintiffs' amended complaint in Gorman as a matter of law. In view of the Portal-to-Portal Act's clear language, as well as the controlling precedent established by Gorman, the same result is also required in this case.

B. <u>The Record Evidence Shows that The Activities At Issue Involve Non-Compensable Travel/Walking Time and/or Non-Compensable Preliminary/Postliminary Activities</u>

The evidence developed during the compensability phase of discovery in this case confirms that plaintiffs cannot show that their allegations are materially different from those rejected by the Second Circuit in Gorman. For instance, plaintiffs readily admit that the "clearing security" process identified in their complaint is the same process that all employees, vendors, and visitors to Ginna must go through when they enter the facility.[6] The same situation was present at Indian Point in the Gorman case, as the Gorman court noted that "…the security measures at entry [into Indian Point were] required (to one degree or another) for everyone entering the plant -- regardless of what an employee does (servicing fuel roads or making

---

[6] *See, e.g.*, LaBerge Decl. at Ex. A- Albrecht Dep. Tr. 11:9 to 11:13; Ex. B. - Smith Dep. Tr. 19:4 to 19:21 & 21:2 to 21:9; Ex. C - VanLiew Dep. Tr. 25:2 to 25:22; Ex. D - Burt Dep. Tr. 13:7 to 13:11; Ex. E - Janke Dep. Tr. 17:14 to 18:14; Ex. F - Carlson Dep. Tr. 16:12 to 18:3; Ex. G - Huff Dep. Tr. 17:4 to 19:22; Ex. H - Mastrangelo Dep. Tr. 20:15 to 21:14; Ex. I - Youngs Dep. Tr. 15:4 to 15:9 & 18:12 to 18:20.

canteen sandwiches) -- and including visitors." 488 F.3d at 594. Based upon this undisputed fact, the Second Circuit ruled that the time spent in "security measures" was non-compensable as a matter of law under the Portal-to-Portal Act amendments. *Id.* at 593-594.

In support of this ruling, the Second Circuit in Gorman cited to its earlier decision in Kavanaugh v. Grand Union Co., Inc., *supra*. There, the Court recognized that "travel" and "walking time" at the beginning and the end of a shift was "outside the FLSA." 192 F.3d at 272. The Court in Kavanaugh held that this remains the case regardless of the amount of time or the rigor involved in the employee's travel. *Id.* The same conclusion was reached in Reich v. N.Y.C. Transit Authority, *supra*, a case involving security personnel who were part of a canine unit. 45 F.3d at 652. The security personnel in Reich were required to care for, and travel with, the dogs they were assigned and sought compensation for this travel time. Although the Reich court recognized that the dogs were "tools" of the security personnel which restricted and, at times, lengthened the manner and time of the guards' commute, this time was nevertheless not compensable. Id. at 650-652. The Reich court instead recognized that the Portal-to-Portal Act amendments excluded commuting time or other time spent engaging in "…non-onerous aspects of preliminary preparation, maintenance, and clean up" from "work time" under the FLSA. *Id.* at 651.

This Second Circuit authority is supported by the Portal-to-Portal Act's plain language and is in line with decisions issued by other federal courts. For example, in Bonilla v. Baker Concrete Construction, Inc., 487 F.3d 1340 (11th Cir. 2007), the Eleventh Circuit held that the time spent by employees riding on buses from assigned off-site parking lots and the time spent going through airport security procedures to gain access to their actual work site was not compensable under the FLSA. The Eleventh Circuit ruled, as did the Second Circuit in Gorman, that these activities were covered by the Portal-to-Portal Act amendments, and thus were properly excludable from compensable time.[7]

---

[7] The Bonilla court relied upon the Second Circuit's Reich decision and other Circuit Court decisions in ruling that time spent "both before and after the security check period is exempt from compensation under the FLSA." 487

Applying this controlling precedent to the facts of this case, there is no question that plaintiffs are not entitled to compensation for any time spent "clearing security." The same is true with respect to the minimal time that plaintiffs spent after they "cleared security" at Ginna. The record confirms that Wackenhut guards normally were already in uniform when they arrived at the Ginna plant and began the security clearance process. (Hook Decl. at ¶ 8). The record further shows that after "clearing security," Wackenhut guards went directly to the room where their weapons were stored and accomplished the "arming up" process with minimal effort in a short amount of time. (Hook Decl. at ¶¶ 10-13)). Indeed, the process of "arming up" and "arming down" was not difficult or time-consuming; instead, it took just seconds to complete and was far from onerous. (Hook Decl.. at ¶ 13).

As the Second Circuit has observed, the Portal-to-Portal Act amendments exempt such "trivial, non-onerous aspects of preliminary preparation, maintenance and cleanup" from "work time" under the FLSA. Reich, 45 F.3d at 651; *see also* Gorman, 488 F.3d at 590. In fact, the Second Circuit in Gorman examined whether the time spent by Indian Point employees walking to their locker room; "donning and doffing" steel-toed shoes, safety glasses, hard hats, and ear plugs; and walking to their assigned work sites within the secured area was compensable "work time" under the FLSA. The Court concluded that even though these activities were "indispensible" to the plaintiffs' work at Indian Point, they did not constitute "work time" for purposes of the FLSA. *Id.* at 594. The Court instead ruled that "[t]he donning and doffing of generic protective gear is not rendered integral by being required by the employer or by government regulation." *Id.* (*citing* Reich v. IPP, Inc., 38 F.3d 1123, 1126 (10th Cir. 1994)

---

F.3d at 1343, *citing* Smith v. Aztec Well Servicing Co., 462 F.3d 1274 (10th Cir. 2006) (holding that gas-drillers in New Mexico were exempt from FLSA compensation for travel that ranged from thirty minutes to three-and-a-half hours each way); Reich v. New York City Transit Auth., 45 F.3d 646, 651 (2d Cir. 1995) (holding that dog handlers' commutes are not compensable just because they bring their dogs into work, and also noting that the Portal-to-Portal Act exemptions "properly protect employers from responsibility for commuting time and for relatively trivial, non-onerous aspects of preliminary preparation, maintenance and clean up"); Vega v. Gasper, 36 F.3d 417 (5th Cir. 1994) (holding that the four hours workers spent traveling on their employer's bus each day was not compensable under the Act); and Ralph v. Tidewater Constr. Corp., 361 F.2d 806 (4th Cir. 1966) (holding that time workers spent traveling on an employer's boat to a construction site was not compensable under the Act).

(holding that donning and doffing safety glasses, a pair of ear plugs, a hardhat, and safety shoes "although essential to the job, and required by the employer, are pre- and postliminary activities."); Anderson v. Pilgrim's Pride Corp., 147 F.Sup.2d 556, 563 (E.D. Tex 2001) (same), *aff'd.*, 44 Fed. Apps. 652 (5th Cir. 2002) (nonprecedential); *but see* Alvarez v. IBP, Inc., 339 F.3d 894, 903 (9th Cir. 2003) (observing that donning, doffing, and cleaning non-unique gear (*e.g.*, hardhats) [is] integral and indispensable as the term is defined in Steiner [v. Mitchell, 350 U.S. 247 (1956)]), *aff'd on other grounds*, Alvarez v. IBP, 546 U.S. 21 (2005)).

Finally, as is the case here, the Second Circuit observed that "donning and doffing" of the equipment at issue in Gorman were "'relatively effortless,' non-compensable, preliminary tasks." *Id.* at 594 (*citing* Reich, 45 F.3d at 649). The Court accordingly held that these activities constituted non-compensable preliminary or postliminary tasks for which no pay was required under the FLSA for several reasons.[8]

The Second Circuit's determination in Gorman is equally applicable to plaintiffs' arguments in this case concerning the "arming up and arming down" time at issue. These activities were "relatively effortless, non-compensable, preliminary and/or postliminary tasks" for which no compensation is required under the FLSA. *Id.*

Plaintiffs' arguments based on the "arming up" and "arming down" process should be dismissed for these additional reasons as well.

---

[8] The Second Circuit correctly concluded that the Supreme Court's decision in Alvarez, *supra*, was distinguishable from the "donning and doffing" claims at issue in Gorman and did not require a different result in that case. Among other things, the Alvarez case involved the burdensome and time consuming process of "donning and doffing" elaborate protective gear as opposed to the "relatively effortless" and less time consuming process of "donning and doffing" other types of safety equipment. As the Second Circuit noted, it did not matter that the safety equipment at issue in Gorman was required "by the employer or governmental regulation" and was indispensable to the plaintiffs' primary duties. 488 F.3d at 594. Furthermore, the Court observed that even if the "donning and doffing" is "integral and indispensable," the time spent engaged in these activities need not be compensated after Alvarez when these activities are *de minimis*. All of the facts and circumstances that were central to the Second Circuit's ruling in Gorman are present in this case as well.

C.  The Aggregate Time at Issue in this Case is *De Minimis* and Consequently Non-Compensable in Any Event

Even if the time at issue were not otherwise exempt under the FLSA because of the Portal-to-Portal Act amendments (which it is), plaintiffs still could not prevail in this case for an additional reason.  The *de minimis* doctrine -- which was first articulated by the United States Supreme Court in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692 (1946) -- precludes plaintiffs from successfully pursuing their claims under the undisputed facts in this case.  *Id.*, *see, e.g.*, Gorman, 488 F.3d at 594; Reich, 45 F.3d at 652; Singh v. City of New York, 524 F.3d 361, 370 (2d Cir. 2008).  In Anderson, the United States Supreme Court held that:

> When the matter at issue concerns only a few seconds or minutes beyond the scheduled working hours, such trifles may be disregarded.  It is only when an employee is required to give up a substantial measure of time and effort that compensable working time is involved.

328 U.S. at 692.

The Second Circuit has interpreted and applied the *de minimis* doctrine on several occasions.  For example, in Gorman, the Court recognized that the *de minimis* doctrine provided alternative grounds for dismissal of the Indian Point plaintiffs' "donning and doffing" allegations.  488 F.3d at 594.  The Gorman court first noted that even if the "donning and doffing" activities at issue in the case were otherwise compensable, it would still be necessary to determine if the time spent by employees engaging in these activities was "*de minimis*" so as not to be actionable under the FLSA.  *Id.* (*citing* Reich, 45 F.3d at 652-53; and Anderson, 328 U.S. at 692).  The Second Circuit noted in this regard that the pleadings in Gorman ". . . would not contradict a conclusion that the time [spent donning and doffing] would be *de minimis*." 488 F.3d at 594 (recognizing in the context of a motion to dismiss that a time period of between ". . . ten and thirty minutes a day passing through multiple layers of security and suiting up" did not ". . . contradict a conclusion that the time so spent would be *de minimis*").

There is no "bright line" test for determining when preliminary or postliminary activities will be considered *de minimis* for FLSA purposes, although time periods of twenty minutes or

more have been held to be *de minimis* in many cases. *Id.*; *see also* Reich, 45 F.3d at 652 (holding that the time spent by police canine handlers cleaning up and caring for their dogs during their commute was *de minimis* and need not be compensated under the FLSA); and Abel v. Morey Machinery Co., 10 F.R.D. 187, 190 (2d Cir. S.D.N.Y. 1950) (holding that eleven minutes was *de minimis* under the FLSA and New York Labor Law).

Many courts outside the Second Circuit have similarly applied the *de minimis* doctrine in dismissing FLSA cases. *See, e.g.*, International Business Investments, Inc. v. United States, 11 Cl.Ct. 58 (1987) (observing that "the case law seems to establish that a period of ten minutes or less per day devoted by an employee to necessary pre- and post-shift work is *de minimis*"); Lindow v. United States, 738 F.2d 1057, 1062 (9th Cir. 1984) (holding that seven to ten minutes of shift change activities among incoming and outgoing employees was covered by the *de minimis* doctrine because "most courts have held that . . . daily periods of approximately ten minutes [are *de minimis*] even though otherwise compensable"); Green v. Planters Nut and Chocolate Company, 177 F.2d 187, 188 (4th Cir. 1949) (holding that ten minutes was *de minimis* under the FLSA); Nardone v. General Motors, Inc., 207 F. Supp. 336, 339 (D.N.J. 1962) (holding that ten minutes was *de minimis* for FLSA purposes); Carter v. Panama Canal Co., 314 F. Supp. 386, 392 (D.D.C. 1970), *aff'd*, 463 F.2d 1289 (D.C. Cir.), *cert. denied*, 409 U.S. 1012 (1972) (holding that two to fifteen minutes was *de minimis* for FLSA purposes); and McIntyre v. Joseph E. Seagram & Sons, 72 F. Supp. 366 (W.D.Ky. 1947) (holding ten to twenty minutes *de minimis* for FLSA purposes).

The Second Circuit recently examined the *de minimis* doctrine again in Singh v. City of New York, *supra*. In Singh, the Court specifically refused to accept the plaintiffs' argument that the *de minimis* test was inapplicable to situations in which it was alleged that the activities at issue were covered by the FLSA's so-called "continuous workday rule." The Court instead held that ". . . the law of this circuit – at least since [Reich v. ] New York City Transit Authority – is that a *de minimis* principal activity does not trigger the continuous workday rule". 524 F.3d at 371, n.8. Consequently, the Court affirmed dismissal of the plaintiffs' complaint in Singh

because "[t]he *de minimis* doctrine permits employers to disregard, for purposes of the FLSA, otherwise compensable work '[when] the matter at issue concerns only a few seconds or minutes of work beyond the scheduled working hours'". Singh, 524 F.3d at 370, *citing* Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 692.

In this case, it is undisputed that the "arming up" and "arming down" process referenced in the Second Amended Complaint was accomplished in a very short amount of time. (Hook Decl. at ¶ 13). In fact, the "arming up" and "arming down" process took less than one minute to complete. *Id* at ¶ 13. Under these circumstances, plaintiffs' allegations concerning these activities are subject to dismissal, even if they otherwise were be deemed compensable under the FLSA or New York Labor Law. Reich, 45 F.3d at 652; and Singh, 545 F.3d at 370-371.

For these reasons and others, the *de minimis* doctrine provides an additional and independent ground for the dismissal of the plaintiffs' Second Amended Complaint in its entirety.

## POINT II

### PLAINTIFFS' CLAIMS CONCERNING THE TIME PERIOD AFTER MARCH 1, 2006, MUST BE DISMISSED FOR ADDITIONAL AND INDEPENDENT REASONS

Ono or about February 26, 2006, Wackenhut implemented a shift briefing process for all guards coming onto a shift at Ginna. Guards are advised during these shift briefings, which typically last between five and ten minutes, about various plant conditions and projects; industry developments; policy and procedural updates; and other general information. Following the briefing, guards are issued their duty belts and weapons and then proceed to their assigned posts. It is undisputed that since the implementation of the pre-shift briefing, to the present, all Ginna guards have been compensated from the beginning of the shift briefing through the time that they

return their duty belts and weapons to the armory at the end of their work day. (Hook Decl. at ¶ 21).[9]

In light of the implementation of shift briefings in late February 2006, it is clear that an independent basis exists for dismissal of plaintiffs' claims concerning the time period from March 1, 2006, to the present. First, for the reasons explained above, plaintiffs clearly cannot carry their burden of proof concerning their claims for compensation for the time spent "clearing security" prior to attending the shift briefings. Gorman, 488 F.3d at 593-594.

Second, it is equally clear that plaintiffs have no claim for any time spent after "clearing security" following March 1, 2006. It is undisputed that since the implementation of the shift briefing, plaintiffs began being compensated almost immediately after they cleared security. (Hook Decl. at ¶¶ 20 & 21). The record shows that from March 1, 2006, to the present, plaintiffs have been able to go directly into the shift briefings once they complete the security clearance process. *Id.* For this reason and others, plaintiffs are unable to carry their burden of proof regarding any aspect of their complaint after March 1, 2006, both as a matter of law and as a matter of fact. *See* Gorman, 488 F.3d at 593-595; Adams, 47 F.3d at 1326 ("[a]n employee who brings suit . . . for unpaid minimum wages or unpaid overtime compensation . . . has the burden of proving he performed work for which he was not compensated").[10]

Under these circumstances, plaintiffs cannot state a claim upon which relief can be granted in this case for several separate, independent, and alternative reasons. First, plaintiffs'

---

[9] *See, also*., LaBerge Decl. at Ex. B- Smith Dep. Tr. 39:19 to 41:15; Ex.C - Van Liew Dep. Tr. 49:2 to 50:16; Ex. D - Burt Dep. Tr. 33:6 to 34:21; Ex. G - Huff Dep. Tr. 47:22 to 48:16; Ex. I - Youngs Dep. Tr. 27:21 to 28:14; Ex.E - Janke Dep. Tr. 38:7 to 39:25; Ex. H - Mastrangelo Dep. Tr. 34:3 to 35:15.

[10] Another additional and alternative basis exists for dismissing plaintiffs' claims for the period from January 2007 to the present. The guards at Ginna are currently represented by Local 27 of the International Union, United Government Security Officers of America. Since January 2007, the guards' terms and conditions of employment have been governed by a collective bargaining agreement negotiated between Wackenhut and the Union. The FLSA recognizes an exclusion from the time for which an employee might otherwise have to be paid for certain pre-or post shift activities that are covered "by custom or practice under a collective bargaining agreement." 29 U.S.C. § 203(o). Wackenhut respectfully submits the collective bargaining agreement in this case constitutes a "custom or practice" within the meaning of the Section 3(o) exclusion and, therefore, provide further grounds for dismissal of any ongoing claims by the plaintiffs. For this additional reason, the plaintiffs' cannot state any actionable claim under the FLSA based upon any pre-or post-shift activities after January 2007.

claims are not supported by the plain language contained in the Portal-to-Portal Act amendments to the FLSA.  Second, plaintiffs' claims likewise are not supported by the controlling legal precedent within the Second Circuit, particularly the <u>Gorman</u> decision in which the Court specifically rejected allegations directly analogous to those advanced by plaintiffs in this case. Third, the amount of time at issue in this case is *de minimis* and thus is not compensable for this reason as well.  Finally, plaintiffs claims are not supported by the undisputed record evidence, which shows that plaintiffs were fully and fairly compensated by Wackenhut at all times relevant to this action, including after March 1, 2006, when plaintiffs began receiving compensation during shift briefings held in the same Security Building where plaintiffs complete the security clearance process required of all employees, vendors, and visitors to the Ginna plant.

Accordingly, the Second Amended Complaint should be dismissed in its entirety for any one or all of the reasons set forth above.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Wackenhut is entitled to summary judgment dismissing all of plaintiffs' allegations in this case.  The Company accordingly asks that the Court grant this motion and issue an order dismissing the complaint in its entirety and granting it such other and further and additional relief as the Court deems just and proper.

Dated: November 12, 2008

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By: /s/ Robert A. LaBerge
Robert A. LaBerge
Christa R. Cook
Attorneys for Defendant
One Lincoln Center
Syracuse, New York 13202-1355
Telephone:  (315) 218-8372
Facsimile:  (315) 218-8100